❏ Original          ❏ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Cellular telephone assigned number (414) 808-5081<br>("TARGET CELL PHONE") | )<br>)<br>)<br>)<br>)<br>) |

Case No.  23-1819M(NJ)

**Matter No.: 2023R00230**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before ___10/30/2023___ *(not to exceed 14 days)*
❏ in the daytime 6:00 a.m. to 10:00 p.m.    ❏ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Honorable Nancy Joseph___.
*(United States Magistrate Judge)*

❏ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❏ for _____ days *(not to exceed 30)*  ❏ until, the facts justifying, the later specific date of _____.

Date and time issued:      10/16/2023 @ 3:29 p.m.          *[signature]*
                                                                                    *Judge's signature*

City and state:      Milwaukee, Wisconsin          Hon. Nancy Joseph, U.S. Magistrate Judge
                                                                                    *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned **414-808-5081** (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber Twaquilla Gray that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at Bellevue, Washington.

2. The Target Cell Phone.

## ATTACHMENT B

## Particular Things to be Seized

## I.  Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

a.  The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period of October 4, 2023, to the present:

    i.  Names (including subscriber names, user names, and screen names);

    ii.  Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

    iii.  Local and long distance telephone connection records;

    iv.  Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

    v.  Length of service (including start date) and types of service utilized;

    vi.  Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

1

vii.  Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii.  Means and source of payment for such service (including any credit card or bank account number) and billing records, and

ix.  All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period of October 4, 2023, to the present including:

 a.  the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

 b.  information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b.  Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

 i.  Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

 ii.  Source and destination telephone numbers;

 iii.  Date, time, and duration of communication; and

 iv.  All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute a controlled substance and distribution of a controlled substance) involving Christopher D. FORTENBERRY, Tarsh A. SMITH, and others.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

# UNITED STATES DISTRICT COURT

for the
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No.   23-1819M(NJ) |
| Cellular telephone assigned number (414) 808-5081 ("TARGET CELL PHONE") | ) ) ) | **Matter No.: 2023R00230** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ Eastern _____ District of _____ Wisconsin _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1) & 846 | Distribution and Conspiracy to Distribute a Controlled Substance |

The application is based on these facts:

See attached Affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Michael LOPEZ
Digitally signed by Michael LOPEZ
Date: 2023.10.13 12:24:06 -05'00'

*Applicant's signature*

Michael Lopez, DEA Task Force Officer

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____ telephone _____ *(specify reliable electronic means)*.

Date:  10/16/2023

*Judge's signature*

City and state:  Milwaukee, Wisconsin

Hon. Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Michael Lopez, being first duly sworn, hereby depose and state as follows:

## I.     INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number **414-808-5081 ,** (the "Target Cell Phone"), whose service provider is T-Mobile ("Service Provider") a wireless telephone service provider headquartered in Bellevue, Washington.  The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2.       Because this warrant application seeks the prospective collection of information, including cell-site location information, that may fall within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), I also make this affidavit in support of an application by the United States of America for an order pursuant to 18 U.S.C §§ 3122 and 3123, authorizing the installation and use of pen registers and trap and trace devices ("pen-trap devices") to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone .

3.      I am a Task Force Officer with the Drug Enforcement Administration ("DEA"), currently assigned to the High Intensity Drug Trafficking Area (HIDTA) and

2

have been since March 2020.  I am also currently a Milwaukee Police Officer and have been since September 2000.

4.     As part of my duties as a DEA TFO, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 21, United States Code, Sections 841, 843, 846, and federal firearms offenses, including violations of Title 18, United States Code, Sections 922(g), 924(a), and 924(c).  In the course of my experience, I have been and continue to be involved in investigations of criminal offenses and have assisted with search warrants for items related to gang investigations, organized crime, violent crime, firearms offenses, drug trafficking, thefts, counterfeit crimes, forgeries, including cellular telephones and other electronic telecommunication devices.

5.     This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable.  Throughout this affidavit, reference will be made to case agents.  Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

6.     I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

7.     Because this affidavit is submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this

investigation. I have set forth only facts that I believe are sufficient to establish probable cause.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that Christopher D. FORTENBERRY (DOB: 03/27/1990) has violated Title 21, United States Code, Section 841(a)(1) (distribution of a controlled substance), and Title 21, United States Code, Section 846 (conspiracy to distribute a controlled substance). There is also probable cause to believe that the device described in Attachment A containing the information described in Attachment B, which will constitute evidence of these criminal offenses, will lead to the identification of other individuals who are engaged in the commission of these offenses.

9. The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

## II. PROBABLE CAUSE

10. Case agents are currently investigating Christopher D. FORTENBERRY (DOB: 03/17/90), who is selling cocaine, and fentanyl in the Eastern District of Wisconsin.

11. In June 2023, case agents initiated an investigation into Tarsh A. SMITH (DOB: 03-27-90), who was identified by a confidential source as a person who was distributing large amounts of heroin in Milwaukee, Wisconsin.

12.     During the preliminary investigation, case agents conducted a check that showed SMITH was on extended supervision with the Wisconsin Department of Corrections for Possess w/Intent-Cocaine (>5-15g), and 2nd-Degree Recklessly Endangering Safety under Milwaukee County case no. 15CF631.

13.     Further investigation showed that on February 1, 2021, SMITH was charged with Possess w/Intent-Heroin (>10-50g) and Possess w/Intent-Cocaine (>1-5g) under Milwaukee County case no. 21CF380.  According to Wisconsin's Consolidated Court Automation Programs (CCAP), the date of the offenses was January 28, 2021.  Case agents reviewed Milwaukee Police Department reports regarding the case and learned that the analysis of a cellphone linked to SMITH contained communications consistent with drug trafficking, including the sale of heroin.

14.     Case agents searched CLEAR for any records for SMITH. CLEAR is a database containing public records available to law enforcement. Case agents have used this database in the past and found it to be reliable and accurate.  A search of CLEAR showed SMITH's last known address was 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI.

15.     On June 2, 2023, case agents served Community Manager Stacy Becker of Mandel Group, a property management company for 10430 West Innovation Drive, Wauwatosa, WI, an administrative subpoena for information related to Apartment 112. Becker confirmed SMITH is the lone tenant of 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI and signed a lease agreement for the property on December 9, 2022. Becker further provided case agents with a copy of SMITH's Wisconsin driver's license,

which SMITH provided during the rental application process. Becker further informed case agents that SMITH was assigned parking stall "108" in the underground parking garage.

16.     On June 6, 2023, the Honorable Michael J. Hanrahan, Circuit Court Judge for Branch 4 in Milwaukee County, authorized a warrant allowing a certified drug detection canine and its handler to enter onto the curtilage of 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI to conduct a dog sniff.

17.     On June 9, 2023, pursuant to a positive alert by the drug detection canine, the Honorable Jean M. Kies, Circuit Court Judge for Branch 45 in Milwaukee County, authorized a warrant to search the premises at 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI.

18.     On June 13, 2023, case agents executed the warrant to search 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI (hereinafter, "the premises"). During the execution of the search warrant, SMITH along with Desiree D. Washington (DOB: 06-11-90) and a juvenile with the initials D.W were located inside the premises.

19.     During a search of the premises, case agents found a black and gray Nike brand shoe box, size 13, inside the left cabinet of the bathroom vanity. The shoe box contained a black canvas bag that held a tan in color Gucci brand bag. The Gucci bag contained a gray chunk of suspected fentanyl inside a sandwich baggie. The suspected fentanyl was in the shape of a square and appeared to be manufactured in a press. Also inside the shoe box was a second sandwich baggie that contained a tan chunk of suspected fentanyl. The shoebox had a third sandwich baggie that contained an off-white

chunk of suspected crack cocaine as well. The suspected controlled substances were later transported to North Central HIDTA where case agents subjected the substances to Nark II field tests no. 2 and no. 33. The suspected fentanyl tested positive for the presence of fentanyl with total weights of 120 grams and 80 grams. The suspected crack cocaine tested positive for the presence of cocaine with a total weight of 40 grams. Case agents inventoried the controlled substances on Milwaukee Police inventory no. 23019110.

20.     In a bathroom vanity on the premises, case agents found a black Adidas brand bag that contained a gray in color Magic Bullet brand blender with gray residue inside the blender. The blender was later transported to North Central HIDTA. Case agents subjected a sample of the residue from inside the blender to a Nark II Field test no. 33. The substance tested positive for the presence of fentanyl. Case agents inventoried the Magic Bullet on Milwaukee Police inventory no. 23019092 as item no. 7.

21.     Case agents found brown paper bags in the center drawer of the bathroom vanity on the premises. The paper bags contained numerous sandwich baggies with the corners missing. Case agents inventoried the baggies on Milwaukee Police inventory no. 23019114 as item no. 5.

22.     Case agents found a white plate in the center drawer of the bathroom vanity on the premises. The white plate contained a tan residue. The plate was later transported to North Central HIDTA. Case agents subjected a sample of the residue to a Nark II field test no. 33. The substance tested positive for the presence of fentanyl. Case agents inventoried the plate on Milwaukee Police inventory no. 23019092 as item no. 9.

23.     Case agents found a black digital gram scale in the center drawer of the bathroom vanity on the premises.  The scale was later transported to North Central HIDTA.  Case agents inventoried the scale on Milwaukee Police inventory no. 23019092 as item no. 5.

24.     Case agents found a black Glock 43X 9mm handgun with serial no. BXCD414. The firearm contained one unspent 9mm cartridge in the chamber and 14 unspent 9mm cartridges in the magazine.  Case agents located the Glock in the front pocket of a gray 3XL Nike brand hooded sweatshirt.  The sweatshirt was located on the right side of the bed along the headboard in the master bedroom of the premises. The Glock was located with a gold in color necklace with a crown pendant with the word "Huncho" attached to the pendant. The Glock was later transported to North Central HIDTA. Case agents inventoried the item on Milwaukee Police inventory no. 23019100. Case agents later transported the Glock to the Milwaukee Police Department's Forensic Unit for a forensic analysis.

25.     Case agents found U.S. currency inside the right front pants pocket of a pair of blue jeans that were recovered from the ground, next to the bed, near the window of the master bedroom of the premises.  The blue jeans containing the US currency were size 44.  On June 21, 2023, case agents transported the currency to Loomis for an official count. The currency was determined to be $7,280.00.

26.      Case agents found an ETS brand 9mm extended magazine in the premises' master bedroom closet. The magazine contained 15 unspent 9mm cartridges. The

magazine was later transported to North Central HIDTA. Case agents inventoried the item on Milwaukee Police inventory no. 23019114.

27. Case agents found a black iPhone with no case and a black Sonim flip style cellular phone on top of a shoe box along southside wall of the premises' master bedroom. The cellular phones later were transported to North Central HIDTA. Case agents inventoried the items on Milwaukee Police Department inventory no. 23019198 as item no. 1 and item no. 2.

28. Case agents as witnessed by West Allis P.D. Eric French found a black iPhone with no case and shattered back, and a black iPhone with clear case. The cellular phones were located on the left side of the bed in the premises' master bedroom. The cellular phones were later transported to North Central HIDTA. Case agents inventoried the items on Milwaukee Police Department inventory no. 23019198 as item no. 3 and item no. 4.

29. Case agents found a red iPhone with a Supreme brand case, and a blue iPhone with a clear case and black magnet holder. The cellular phones were located on the right side of the bed in the premises' master bedroom. The cellular phones were later transported to North Central HIDTA. Case agents inventoried the items on Milwaukee Police Department inventory no. 23019198 as item no. 5 and item no. 6.

30. Case agents found a black iPhone with a black case. The cellular phone was on top of the bed in the premises' south bedroom. The cellular phone was later transported to North Central HIDTA. Case agents inventoried the cellular phone on inventory no. 23019198 as item no. 7.

31.     Case agents found a blue plate in the bottom right drawer of the kitchen island in the premises. The plate contained an off-white residue. The plate was later transported to North Central HIDTA. Case agents subjected a sample of the residue to a Nark II field test no. 07. The substance tested positive for the presence of cocaine. Case agents inventoried the plate on Milwaukee Police inventory no. 23019092 as item no. 8.

32.     Case agents found a Pyrex glass in the cabinet under the sink in the premises. The Pyrex contained an off-white residue. The Pyrex was later transported to North Central HIDTA. Case agents subjected a sample of the residue to a Nark II field test no. 07. The substance tested positive for the presence of cocaine. Case agents inventoried the Pyrex on Milwaukee Police inventory no. 23019092 as item no. 4.

33.     Case agents found a black digital gram scale in the second drawer from top of the kitchen island in the premises. The scale was later transported to North Central HIDTA. Case agents inventoried the scale on Milwaukee Police inventory no. 23019092 as item no. 6.

34.     Case agents located vehicle keys in the apartment. The keys belonged to a black Chevy Equinox bearing Florida registration 45ASKZ (Vin no. 2GNAXHEVXL6278765) that was parked in the underground garage (stall 108).  The vehicle is a rental vehicle with PV Holdings. Nothing of evidentiary value was found in the vehicle.

35.     On June 14, 2023, the Honorable Barry Phillips, Court Commissioner for the First Judicial District of Wisconsin, authorized a search warrant to conduct a forensic

analysis of the above-referenced cellular phones that were seized during the execution of the search warrant at 10430 West Innovation Drive, Apartment 112, Wauwatosa, WI.

36.     Case agents viewed a forensic analysis of the blue iPhone with clear case with black magnet holder that was seized from the master bedroom and later placed on Milwaukee Police inventory no. 23019198 item no. 6. The cellular phone was identified as an iPhone 12 with phone number 414-610-5413 and Apple ID hunchotez38@icloud.com.

37.     While viewing text messages sent from this device, case agents observed a conversation between SMITH, who is believed to be the user of the blue iPhone assigned number 414-610-5413 (recovered from the master bedroom of SMITH's residence on June 13, 2023), and "Playboy," who was using cellular phone number 414-803-1633.

38.     Depicted below is a conversation between who agents believe was SMITH and "Playboy," which was obtained through a forensic analysis of the blue iPhone.





**Playboy**
Here
12/31/2022 4:13:43 PM(UTC-6)

Sources (1)

_$!<Other>!$_
Me too.. Jeep
12/31/2022 4:14:08 PM(UTC-6)

Sources (1)

_$!<Other>!$_
I can't even hit this shit Playboy ..
12/31/2022 5:41:39 PM(UTC-6)

_$!<Other>!$_
Jail call
12/31/2022 5:42:26 PM(UTC-6)

Sources (1)

_$!<Other>!$_
My head just called back and said he don't feel it.. I told him wait a lil bit longer to let it kick in
12/31/2022 5:43:39 PM(UTC-6)

Sources (1)

**Playboy**
👌
12/31/2022 5:44:03 PM(UTC-6)

_$!<Other>!$_
Playboy they saying this shit touched up my baby
12/31/2022 5:59:07 PM(UTC-6)

Sources (1)

_$!<Other>!$_
Meet me real quick I need to grab something. I don't got shit and my people calling
12/31/2022 6:24:36 PM(UTC-6)

Sources (1)

**Playboy**
Wya
12/31/2022 6:25:05 PM(UTC-6)



39.     Given the context of the conversation, case agents believe SMITH is purchasing drugs from "Playboy".   Case agents also believe SMITH is informing "Playboy" he will not be able to cut the drugs. Case agents know through training and experience that cutting is a common process drug dealers use to maximize their profits. Drug dealers will mix a substance that is similar in texture and color with illicit drugs such as heroin, cocaine, or fentanyl to increase quantity. This process will also change the texture and color of the illicit drug and alter the effect of the drug.  If an illicit drug has been cut too much, a drug dealer will be unable to maximize profit and the illicit drug can become too diluted.

40.     On July 14, 2023, case agents debriefed a confidential source, hereinafter referred to as CS. The CS informed case agents that "Playboy", an associate and source of supply for SMITH, was selling kilograms of cocaine and/or fentanyl. The CS further identified "Playboy" as a "shooter".  Case agents know "shooter" is street terminology used to describe an individual who is known to use firearms in response to one's enemies. The CS stated "Playboy" uses Facebook profile "Chris Corleone" and showed case agents a Facebook photograph of "Playboy".  Furthermore, on June 24, 2022, "Playboy" posted a

photograph depicting himself and a child with a caption that identified himself as "Uncle Playboy".

41.    On July 17, 2023, case agents searched a law enforcement data base and developed an investigate lead.  Case agents were able to compare a booking photograph collected from the law enforcement database of Christopher D. FORTENBERRY, (DOB: 03-17-90), with the Facebook photograph of "Playboy".  FORTENBERRY is the same person depicted in the Facebook photograph of "Playboy".

42.    On August 1, 2023, the CS informed case agents that FORTENBERRY contacted someone nicknamed "Nuke" about purchasing cocaine and/or fentanyl.  The CS further stated "Playboy" informed "Nuke" that he had a shipment coming in soon. The CS stated "Playboy" was using cellular phone number **414-808-5081** (the "Target Cell Phone").  Case agents know it is common for drug dealers to use more than one phone number.   Case agents believe the CS is credible because the CS has provided law enforcement information in the past that has led to search warrants and the seizure of contraband and weapons.   Additionally, the information the CS provided has been corroborated through independent investigation. That affiant is aware that the CS mentioned in this affidavit has a criminal history, including a non-felony criminal conviction, and is providing information to law enforcement for monetary gain.

43.    On August 3, 2023, your Affiant served T-Mobile an administrative subpoena for subscriber information related to the "Target Cell Phone." T-Mobile's records show the subscriber for the "Target Cell Phone" is Twaquilla Gray of 6421 North 106th Street, Milwaukee, WI.

44.     A check of Wisconsin Circuit Court Access showed FORTENBERRY was issued a citation under Milwaukee County case no. 23TR011201 while operating a 2019 Volkswagen Atlas bearing Wisconsin registration ALD-6981.  Wisconsin Department of Transportation records show the Volkswagen is registered to Twaquilla M. Gray, DOB: 11-07-82, of 6421 North 106th Street, Milwaukee, WI.

45.     On September 6, 2023, U.S. Magistrate Judge Stephen C. Dries, Eastern District of Wisconsin, authorized the collection of GPS/E-911 Phase II data (location information) (23-M-430) for **414-808-5081** (the "Target Cell Phone).

46.     While monitoring the location data from FORTENBERRY's cellular phone, case agents observed that on September 9, 2023, at approximately 7:58 a.m., FORTENBERRY traveled to O'Hare International Airport, in Chicago, Illinois. On the same date at approximately 1:28 p.m., FORTENBERRY arrived at the San Francisco International Airport in San Francisco, California. Location data showed FORTENBERRY subsequently left the San Francisco area.  On September 10, 2023, at approximately 3:28 a.m., FORTENBERRY traveled back to the San Francisco International Airport. On the same date at approximately 11:48 a.m., FORTENBERRY arrived at O'Hare International Airport.

47.     On September 28, 2023, at approximately 4:10 a.m., FORTENBERRY traveled to O'Hare International Airport. On the same date at approximately 10:00 a.m., FORTENBERRY arrived at the San Francisco International Airport. Location data showed FORTENBERRY stayed relatively close to the San Francisco International Airport. On the

same date at approximately 7:30 p.m., FORTENBERRY arrived at O'Hare International Airport.

48. On September 29, 2023, at approximately 11:15 a.m., FORTENBERRY traveled to O'Hare International Airport. On the same date at approximately 4:28 p.m., FORTENBERRY arrived at McCarran International Airport in Las Vegas, Nevada. On October 3, 2023, FORTENBERRY arrived at Milwaukee Mitchell International Airport.

49. I am aware that in January of 2022, TFO Troy Maas conducted a debrief of a confidential source who informed TFO Maas that FORTENBERRY was a multi-ounce to kilogram quantity cocaine dealer who had a source of supply in San Francisco, California. For several reasons, case agents believe CS-2's information is reliable and credible. Substantial parts of CS-2's information have been independently corroborated and verified by law enforcement. CS-2 has made direct observations, which were further corroborated and verified by law enforcement. CS-2's information has been consistent with information obtained from travel records, utility records, telephone toll records, social media records, public databases, and surveillance. CS-2 has also provided information on violent crimes unrelated to this investigation, leading to the arrests of multiple suspects. CS-2 has prior convictions for theft, possession of controlled substances, possession of a firearm by a felon, manufacture or deliver controlled substances, and parole violations. CS-2 is cooperating with the government in exchange for financial compensation.

50. Pen registers show FORTENBERRY was in contact with a phone number that has a California area code. Case agents believe that FORTENBERRY's quick trips to

and from northern California (i.e., the San Francisco Bay area) are indicative of drug trafficking.

51.     In my training and experience, I have learned that the Service Provider is a company that provides cellular communications service to the general public. I also know that providers of cellular communications service have technical capabilities that allow them to collect and generate information about the locations of the cellular devices to which they provide service, including cell-site data, also known as "tower/face information" or "cell tower/sector records." Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular device and, in some cases, the "sector" (i.e., faces of the towers) to which the device connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data provides an approximate general location of the cellular device.

52.     I know that T-Mobile can also collect timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

53.     I know that T-Mobile also can collect per-call measurement data, which T-Mobile also refers to as WebMap. RTT data estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel

between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

## Cell-Site Data

54.     Based on my training and experience, I know that the Service Provider can collect cell-site data on a prospective basis about the Target Cell Phone. Based on my training and experience, I know that for each communication a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer was connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as the Service Provider typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

## E-911 Phase II / GPS Location Data

55.     I know that some providers of cellular telephone service have technical capabilities that allow them to collect and generate E-911 Phase II data, also known as GPS data or latitude-longitude data. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. As discussed above, cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio

signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data. Based on my training and experience, I know that the Service Provider can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available.

## Pen/Trap Data

56. Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number ("ESN"), a Mobile Electronic Identity Number ("MEIN"), a Mobile Identification Number ("MIN"), a Subscriber Identity Module ("SIM"), a Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), an International Mobile Subscriber Identifier ("IMSI"), or an International Mobile Equipment Identity ("IMEI"). The unique identifiers – as transmitted from a cellular device to a cellular antenna or tower – can be recorded by pen-trap devices and indicate the identity of the cellular device making the communication without revealing the communication's content.

## AUTHORIZATION REQUEST

57.     Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

58.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control.

59.     I also request that the Court direct the Service Provider to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with the Service Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Service Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government.  The government shall reasonably compensate the Service Provider for reasonable expenses incurred in furnishing such facilities or assistance.

60.     Because the warrant will be served on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1. Records and information associated with the cellular device assigned **414-808-5081** (referred to herein and in Attachment B as "the Target Cell Phone"), with listed subscriber Twaquilla Gray that is in the custody or control of T-Mobile (referred to herein and in Attachment B as the "Provider"), a wireless communications service provider that is headquartered at Bellevue, Washington.

2. The Target Cell Phone.

# ATTACHMENT B

## Particular Things to be Seized

## I. Information to be Disclosed by the Provider

To the extent that the information described in Attachment A is within the possession, custody, or control of the Provider, including any information that has been deleted but is still available to the Provider or that has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), the Provider is required to disclose to the government the following information pertaining to the Account listed in Attachment A:

    a. The following subscriber and historical information about the customers or subscribers associated with the Target Cell Phone for the time period of October 4, 2023, to the present:

        i. Names (including subscriber names, user names, and screen names);

        ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

        iii. Local and long distance telephone connection records;

        iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

        v. Length of service (including start date) and types of service utilized;

        vi. Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");

1

vii. Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

viii. Means and source of payment for such service (including any credit card or bank account number) and billing records, and

ix. All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Target Cell Phone for the time period of October 4, 2023, to the present including:

    a. the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses); and

    b. information regarding the cell tower and antenna face (also known as "sectors" through which the communications were sent and received), as well as timing advance or engineering data commonly referred to as per call measurement data (PCMD, RTT, True Call, Advance Timing, Network Event Location Operating System Information (NELOS), WebMap, or equivalent).

b. Information associated with each communication to and from the Target Cell Phone for a period of 30 days from the date of this warrant, including:

i. Any unique identifiers associated with the cellular device, including ESN, MEIN, MSISDN, IMSI, SIM, or MIN;

ii. Source and destination telephone numbers;

iii. Date, time, and duration of communication; and

iv. All data about the cell towers (i.e. antenna towers covering specific geographic areas) and sectors (i.e. faces of the towers) to which the Target Cell Phone will connect at the beginning and end of each communication

The Court has also issued an order pursuant to 18 U.S.C. § 3123, dated today, for such information associated with the Target Cell Phone.

c. Information about the location of the Target Cell Phone for a period of 30 days during all times of day and night. "Information about the location of the Subject Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information.

   i. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of the Provider, the Provider is required to disclose the Location Information to the government. In addition, the Provider must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with the Provider's services, including by initiating a signal to determine the location of the Target Cell Phone on the Provider's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate the Provider for reasonable expenses incurred in furnishing such facilities or assistance.

   ii. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).

## II.    Information to be Seized by the Government

All information described above in Section I that constitutes evidence of violations of Title 21, United States Code, Sections 846 and 841(a)(1) (conspiracy to distribute a controlled substance and distribution of a controlled substance) involving Christopher D. FORTENBERRY, Tarsh A. SMITH, and others.

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.